Roland D. **PETTENGILL**, Appellant,

v.

George **VEASEY**, Sgt., Cummins Unit, Appellee.

No. 92–1511.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1992.

Decided Jan. 12, 1993.

Roland D. Pettengill, pro se.

David B. Eberhard, Little Rock, AR, argued (Winston Bryant and David B. Eberhard, on brief), for appellee.

Before McMILLIAN, JOHN R. GIBSON and BEAM, Circuit Judges.

McMILLIAN, Circuit Judge.

Roland D. Pettengill, an Arkansas inmate, appeals from the final judgment entered in the District Court for the Eastern District of Arkansas adopting the findings and conclusions of the magistrate judge following an evidentiary hearing and dismissing Pettengill's failure to protect and medical needs claims brought under 42 U.S.C. § 1983. For reversal appellant argues the district court erred in making its factual and legal determinations. For the reasons discussed below, we reverse and remand the case to the district court for further proceedings.

In his complaint, Pettengill claimed that Sergeant George Veasey violated his Eighth Amendment rights by placing him in the exercise yard with a known enemy, failing to check his "enemy alert list," and refusing to take him to the infirmary after the two inmates fought in the yard. Pettengill sought damages and declaratory and injunctive relief. Pettengill later amended his complaint as ordered by the magistrate judge. He reiterated his allegations and requested a jury trial.

At the evidentiary hearing, Pettengill testified that on July 25, 1989, while he was on 48–hour relief from punitive isolation, he told Veasey that he wished to go to yard call. He further testified that when Veasey came back later to take him to yard call, he saw inmate Jaskolka, asked Veasey if they were being placed on the yard together, and informed Veasey that Jaskolka was on his enemy alert list. Pettengill stated that Veasey gave him the choice of either entering the yard with Jaskolka or refusing his yard call. Faced with these options, Pettengill chose to enter the yard despite Jaskolka's presence. Pettengill testified that Jaskolka struck him first, knocked him to the ground, and kicked him. Pettengill further testified that Veasey and Sergeant Virgil Rhodes, another guard on yard call, stopped the fight by pulling the two inmates apart. Pettengill testified that he expressed his desire to go to the infirmary to get an ice pack for his swollen right eye and to have the cut above his right eye cleaned to prevent infection, but Veasey

refused. Pettengill felt he had a "right" to go to yard call. Pettengill also testified that Veasey did not check the enemy alert lists and could have easily placed him in the second yard or taken him to the yard on a different yard call. Finally, Pettengill testified that he received Band–Aids the night of the fight but he was never seen by a doctor although he completed several sick call slips.

Inmate Lester Jacobs testified Pettengill told Veasey he and Jaskolka did not get along. Jacobs confirmed Pettengill's testimony that Jaskolka rushed Pettengill, struck him first, and beat him to the ground. Jacobs testified that Jaskolka was waiting for an opportunity to "jump" Pettengill. Jacobs also testified that guards do not require inmates to go to yard call.

Don Biles, Pettengill's cellmate on the day in question, testified Pettengill came back to the cell with a knot on his head and his right eye was swollen shut. Biles stated that he did not see a whole lot of blood, but there was some present around a small cut in Pettengill's right eyebrow. Biles confirmed Pettengill's testimony that he asked to go to the infirmary. Biles testified, however, that "Veasey told him to hold his horses; [I]et me call the infirmary." Biles further testified that Veasey called the infirmary and that the policy for this particular barracks was that, once the infirmary was notified, a nurse would usually come to the barracks. Biles did not know if Pettengill ever went to the infirmary.

Sergeant Rhodes testified that he and Veasey escorted Pettengill to the yard and that Pettengill and Jaskolka were the last two inmates to be handcuffed before they brought the inmates inside from the yard. Rhodes, however, testified that Pettengill attacked Jaskolka. Rhodes also testified that Pettengill did not inform him that Jaskolka was on his enemy alert list. He stated that if Pettengill had done so, he would have put Pettengill in the second yard. Rhodes further testified that Pettengill did not mention going to the infirmary. Rhodes stated that Veasey told him that he

would ask both Pettengill and Jaskolka if they needed to go to the infirmary.

Veasey testified that Pettengill attacked Jaskolka first and that was why he charged Pettengill with a disciplinary rule violation—Pettengill was the aggressor. Veasey also testified that Pettengill never told him that Jaskolka was on his enemy alert list. Veasey stated he did not see any bruises, cuts, or blood, and Pettengill said he did not need to go to the infirmary. Veasey testified that if he had seen blood, he would have made Pettengill go to the infirmary. Veasey acknowledged that Jaskolka and Pettengill are listed on each other's enemy alert lists, but, due to the number of inmates, he stated that the guards rely on the prisoners to tell them who is on their enemy alert lists.

The magistrate judge found that "it [was] more likely than not" that Rhodes, not Veasey, took Pettengill to the yard. The magistrate judge also found that Pettengill did not inform the guards that Jaskolka was on his enemy alert list or seek to avoid Jaskolka, and Pettengill "took advantage of an opportunity to assault Jaskolka." In addition, the magistrate judge found that while Pettengill may have been jostled in the encounter, he "was not injured to the degree that he testified, and . . . there was no immediate need for medical treatment." The magistrate judge concluded that no Eighth Amendment violation occurred and recommended dismissal. Pettengill objected to the magistrate judge's view of the evidence and requested that the district court deny the recommendation and allow the case to proceed to trial. The district court adopted the recommendations and dismissed Pettengill's claims.

■ Because Pettengill requested a jury trial, we conclude that the magistrate judge erroneously made credibility determinations "resolving direct factual conflicts in favor of [Veasey] without assuming as true all facts supporting [Pettengill] which the evidence tended to prove and without giving [Pettengill] the benefit of all reasonable inferences." *See Henson v. Falls*, 912 F.2d 977, 979 (8th Cir.1990) (magistrate judge must apply directed verdict standard

if plaintiff demands jury trial). Resolving factual disputes in Pettengill's favor and giving him the benefit of all reasonable inferences, reasonable jurors could have concluded that Pettengill reasonably feared for his safety, reasonably apprised prison officials of the existence of the problem and showed a need for protective measures. Therefore, we conclude that the district court erred in entering judgment for Veasey because a reasonable jury could have concluded that Veasey acted in violation of Pettengill's constitutional rights.

■ Similarly, we conclude the district court improperly resolved factual disputes as to Pettengill's medical needs claim in favor of Veasey. Pettengill testified that he had a cut above his right eye, and that his right eye was swollen shut. Inmate Biles corroborated this testimony. Veasey testified he did not see any bruises, cuts, or blood. Pettengill testified that Veasey denied him access to medical care; Veasey testified that Pettengill refused medical care; inmate Biles testified that Veasey attempted to obtain medical care for Pettengill. Based on all of this conflicting testimony, however, the district court concluded that "[Pettengill] was not injured to the degree that he testified, and that there was no immediate need for medical treatment, and consequently, no failure to provide it." Examining the evidence in a light most favorable to Pettengill, we conclude a reasonable jury could have found for Pettengill.

Accordingly, we reverse and remand this case to the district court for further proceedings consistent with this opinion.